The Full Commission has reviewed the Prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Lawrence B. Shuping, Jr., and the briefs on appeal. Both parties waived oral arguments in this matter. Neither party showed good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award except for some minor non-substantive modifications.
* * * * * * * * *
Prior to the hearing on 26 June 1995, the parties entered into a Pre-Trial Agreement, which is hereby incorporated by reference as if fully set-out herein, and where they agreed to a number of jurisdictional and other factual stipulations. The Parties have also agreed to stipulate a package of medical records from the medical providers involved.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a right-handed 44 year old married female with a high school education. After graduating from high school she did secretarial/office-type work for twenty years and then worked for several grocery store chains, including as a clerk in the meat department at the S R Supermarket and in a similar capacity in the seafood department at a Winn Dixie store where she sprained her right wrist shoveling ice in 1992.
2. In approximately September of 1992 plaintiff became employed as a maintenance worker at defendant-employer's real estate resort, whose amenities include a golf course and 90 slip boat marina.
3. Plaintiff was initially assigned to landscaping duties there such as planting flowers, raking, hoeing, grass cutting, leaf blowing, weed eating, painting and picking up trash; however, her duties were subsequently expanded to include office maintenance. This resulted in her continuing to perform some of the same duties she did while landscaping, such as painting, leaf blowing and picking up trash, but the additional duties of washing and maintaining the golf carts that transported customers around the premises, cleaning the offices and office condominiums where customers stayed, and scrubbing the decking around the 90 boat slip marina among other duties.
4. From the evidence, this matter involves an occupational disease claim for disabling cubital tunnel syndrome of plaintiff's dominant right elbow due to the manner that she had to repetitively use the same extremity in the course of her job as a maintenance worker at defendant-employer's resort. Further, her occupational disease is characteristic of and peculiar to the same trade, occupation or employment, wherein, as compared to members of the general public and other professions at large, there is an increased risk of developing the same disease or condition because there is an increased incidence of compressive neuropathies in individuals whose jobs similarly require repetitive motion with their upper extremity and it is the type of high association recognized by the medical literature.
Cubital tunnel syndrome itself involves a compressive neuropathy of the median nerve in the region of the elbow and is manifested by pain in the elbow, forearm and hand as well as paresthesias or tingling and numbness in the little and ring fingers. The condition is most often due to trauma to the median nerve, either direct trauma or small micro traumas such as the repetitive motion involved and can occur in individuals who are vulnerable to this type of repetitive trauma because of a congenital abnormality in their elbow. Cubital tunnel syndrome is generally the result of a chronological order of problems as opposed to acute ones and is secondary to the individual's own anatomy and the type of activities they are engaged in.
5. Due to the above-described manner that she had to repetitively use her dominant right upper extremity in the course of her regular maintenance worker's job at defendant-employer's resort plaintiff has developed disabling cubital tunnel syndrome in the same extremity manifested by pain in her elbow, forearm and hand as well as paresthesias in the little and ring fingers.
6. After cleaning defendant-employer's information center on 13 July 1994, which not only required her to use a brush to scrub mildew and berry-stained bird droppings off the premises, but to wash and Windex the windows, plaintiff developed significant right arm problems from her cubital tunnel syndrome forcing her to seek medical treatment the following day from Dr. Lane, who had earlier treated the right wrist sprain she sustained shoveling ice at Winn Dixie in 1992.
7. Dr. Lane prescribed a splint to wear and anti-inflammatories, but when plaintiff's condition did not improve he referred her to the orthopedic surgeon that has treated her since, Dr. Francis McCarthy, who initially saw her on 28 July 1994. Despite her symptoms plaintiff was able to continue regularly working for defendant-employer until she saw Dr. McCarthy and he initially attempted a conservative course of treatment consisting of using a splint, non-steroid anti-inflammatories and analgesics for pain. Because conservative treatment failed to resolve plaintiff's symptoms she was referred for an EMG and nerve conduction studies confirming the compressive neuropathy she was suffering from her cubital tunnel syndrome ultimately requiring her to undergo corrective surgery in December of 1994 and involving a right cubital tunnel release as well as medial epicondylectomy with an anterior subcutaneous ulnar nerve transposition on the same right side. Recovery from this type of surgery is variable dependent on how long the compressive neuropathy had existed prior to surgery, but could range as little as from four to six weeks to as much as nine to twelve months.
8. Although she had not then reached maximum medical improvement and/or the end of the healing period from and following her cubital tunnel syndrome and the corrective surgery necessitated thereby; plaintiff's condition initially improved and by February 7, 1995 she was capable of returning to light duty work despite still having some discomfort and swelling in her elbow as well as continued limitation of motion; however, defendant-employer did not have any suitable work available for her.
9. Plaintiff has since made a reasonable, but unsuccessful, attempt to find suitable work. On February 18, 1995 she began receiving unemployment benefits and was still receiving them at the time of hearing entitling defendants to a credit against the instant Award of continuing disability pursuant to the provisions of G.S. 97-42.1 and the undersigned assumes the parties can obtain the amounts and periods of benefits received from the Employment Security Commission and stipulate as to the appropriate credit due without the necessity of a further Opinion and Award or hearing; however, in the event they cannot either party can request one.
10. Plaintiff's symptoms continued to improve and by March 21, 1995 she was capable of returning to unrestricted work and at the time was not complaining of any problems with her arm; but on physical examination still lacked full extension of the elbow and had some residual muscle weakness in the small muscles of her hand; however, defendant-employer did not offer her work and plaintiff was unable to find work despite reasonable efforts to look for it.
11. Although plaintiff's symptoms initially improved following surgery; by 16 May 1995 her condition had worsened when she developed a recurrence of the compressive neuropathy in her right elbow, which is most likely due to scar tissue from the surgery she underwent for her cubital tunnel syndrome, not only resulting in her again becoming totally incapacitated by her cubital tunnel syndrome and has not since reached maximum medical improvement from her worsened condition; but rather, requires surgical re-exploration of her elbow.
12. Unless and until she undergoes further surgical exploration of her elbow plaintiff will not have reached maximum medical improvement and/or the end of the healing period from and following the compressive neuropathy that she developed as a result of her cubital tunnel syndrome and plaintiff has remained totally incapacitated since 16 May 1995 when her condition worsened and she was no longer able to return to her regular maintenance worker's job for defendant-employer.
* * * * * * * * * * * * * *
Based upon the foregoing and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Due to the manner that she had to repetitively use her dominant right upper extremity in the course of her job as a maintenance worker at defendant-employer's resort plaintiff has developed disabling cubital tunnel syndrome of the same extremity, which (disease or condition) is due to causes and conditions that are characteristic of and peculiar to her particular trade, occupation or employment, but excluding all ordinary diseases of life to which the public is equally exposed outside of that employment. Plaintiff has thus contracted a compensable occupational disease pursuant to the provisions of G.S. 97-53(13).
2. For the reasons stated in the above findings of fact plaintiff has remained totally disabled as a result of the occupational disease giving rise hereto since 29 July 1994 entitling her to compensation benefits at a rate of $133.34 from 29 July 1994 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains totally disabled, subject to a change of condition, medical or employment, as well as a credit for the unemployment compensation benefits that plaintiff began receiving on February 18, 1995 and still was at the time of hearing and the Full Commission assumes the parties can obtain the periods and amounts of benefits received from the Employment Security Commission and stipulate as to the appropriate credit without the necessity of a further Opinion and Award or hearing; however, in the event they are not either party can request one.
3. As the result of her occupational disease, plaintiff is entitled to have defendants pay for all reasonable medical expenses incurred or to be incurred as a result thereof, including plaintiff's original cubital tunnel release and the surgical re-exploration she requires.
* * * * * * * * * * * * * *
Based upon the foregoing, findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay plaintiff, on account of her continuing total disability, compensation at a rate of $133.34 per week from July 29, 1994 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains totally disabled, subject to a change of condition, medical or employment, as well as a credit pursuant to the provisions of G.S. 97-42.1 for the unemployment compensation benefits she began receiving on February 18, 1995 and still was at the time of hearing and the undersigned assumes the parties can obtain the periods and amounts of benefits received from the Employment Security Commission and stipulate as to the appropriate amount of the credit due without the necessity of a further Opinion and Award or hearing; however, if they cannot, either party can request one. Such compensation as has accrued herein shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. At this time a reasonable attorney fee in the amount of twenty-five percent of the accrued net (after credit for unemployment benefits) compensation benefits due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the same Award and forwarded directly thereto. For the balance of his fee defendant shall forward every fourth compensation check payable herein directly to plaintiff's counsel.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto when bills for the same are submitted in accordance with the Industrial Commission rules.
4. Defendants shall bear the cost, including as part thereof the $350 expert witness fee previously awarded Dr. McCarthy for his deposition testimony to the extent the same has not already been paid.
 S/ ____________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ _________________________ BERNADINE S. BALLANCE COMMISSIONER